CHARLES J. SCHUCK, Judge.
The claimant, J. P. Burgess, administrator of the estate of Edward Sinclair Burgess, deceased, together with five other administrators of the estates of Esther Jones, Ruth Ann Lively, Roy Herber Adkins, Jr., Edward D. Burnette, Jr., and Mar- *141 guerette Francis Surber, respectively, bring their several claims against the state road commission for damages resulting from the deaths of the aforesaid Edward Sinclair Burgess, Esther Jones, Ruth Ann Lively, Roy Herbert Adkins, Jr., Edward D. Burnette, Jr., and Marguerette Francis Surber, occasioned by the automobile in which the said six persons were riding being driven or precipitated over a high embankment adjacent to primary road or route No. 61 at and near Deepwater, in Fayette county, West Virginia, on the night of January 26, 1941. All of the said six persons, so far as the record reveals, were instantly killed in the said accident. Each claim is brought in the amount of $10,000.00 and as the facts and circumstances surrounding the happening of the accident are identical, so far as the individual claims are concerned, the court combined them and heard all of the testimony at one hearing, and the claims are now so considered, one opinion only being necessary and governing the disposition of all the said claims or actions.
The testimony shows that the accident happened on the night of January 26, 1941, at approximately 10:45 o’clock; it was a dark, misty night, with limited vision, and while not a fog, yet weather conditions were such as to make it difficult to keep the windshield of an automobile clean and free so ■as to have an unimpaired vision while driving. The road in question reaches from a point near the Kanawha river about six or seven miles from the town of Montgomery, up the mountainside in the direction of Oak Hill; is steep, and at the place of the accident thereof, when traveling toward Oak Hill, has a very high, dangerous and quite precipitous embankment or fall, approximately ninety feet high. It was over this embankment that the automobile in question was driven, falling the entire distance down the side thereof and landing on the railroad tracks below. There were no barriers or railings constructed along the highway at the point in question where the accident took place, nor were there any markers or signs posted along the road to warn persons of its condiiton nor of the nearby embankment; nor was there any white line on the highway to indicate its center or its *142 possible width, by which an automobilist could or may have been guided.
The claimants maintain that the state road commission was negligent in failing to provide guards or barriers, as the place where the accident happened was very dangerous; and that the commission was further negligent in not having proper warning signs and in not having the highway marked and lined as a further security to the traveling public.
The state resists the claims on the ground fa) that the state road commission was not bound to erect guardrails or barriers and (b) that the occupants of the automobile were guilty of contributory negligence and therefore the representatives of their several estates barred from any recovery.
In addition to the testimony taken by the court, the members thereof, after the said hearing was closed, realizing the importance of the claims and the questions involved, personally visited the scene of the accident and were thereby afforded a better opportunity for the consideration of the testimony in its application to the various questions raised by the claimants and by the state.
Considering first the legal question offered by the state as to whether or not the road commission was obliged to erect barriers or guardrails, this court had held on several occasions that:
“When the state road commission by the act of 1933 assumed control and authority over the primary and secondary roads of the state, the duty was imposed upon it to guard all dangerous places on the public roads and bridges by suitable railings or barriers, so as to render the said roads and bridges reasonably safe for travel thereon by day or by night.” Fry v. Commission, 1 Ct. Claims (W. Va.) 48; Hersh-barger v. Commission, 1 Ct. Claims (W. Va.) 52.
In both of these cited claims substantial awards were made and subsequently honored and confirmed by the Legislature *143 (1943) and ordered paid. In the case of Wells v. County Court of Marion County, 85 W. Va. 663, 102 S. E. 472, it was held:
“The law imposes upon a county court or other public authority in maintaining public roads and bridges, the duty to so guard all dangerous places by suitable railings or barriers as to render them reasonably safe for travel thereon by day or night.”
We can percieve no reason for changing the rule or holding llaid down in the cited cases when we come to consider the instant claims, assuming, of course, that the place of the accident was highly dangerous as hereafter pointed out, and consequently feel that we need not give further consideration to the matter of whether the road commission had a duty to erect guardrails and barriers when necessary and when required for the safety of the traveling public.
Was the place where the accident happened dangerous and did it require the erection and construction of suitable guardrails and barriers? We are of the opinion that it was, and that guardrails and barriers ought to have been erected or installed on the highway. The testimony shows the road to be steep, approximately eighteen feet wide from the mountainside to the embankment or cliff across the highway; that there was .a reverse or “S” curve at the point of the accident, (record p. 37); that the paved part of the road was fourteen feet wide (record p. 42), with a berm of three feet (record p. 43). Beyond the paving and on the side of the road where the accident happened the berm narrowed as one approached the point in the road where the automobile went over the cliff, graduating from a width of approximately six and one-half feet to three feet in width, and this fact of itself, in our opinion, presented a hazard to one using the road, and especially so on a dark, misty night, and as there were no lines indicating the center line of the paved portion of the highway, as well as no warning signs or markers of any kind, the hazard became doubly dangerous when considered in connection with the attendant conditions existing at the time. Coupled with these facts was the further fact, highly *144 important in our judgment, of the reverse curve which existed at the point of the accident, and the very nature of which added to the danger and made an accident highly probably even to one acquainted with these conditions and exercising the degree of care required of a traveler on the road in question at the time and place of the accident. Undoubtedly the commission or the state road authorities in charge of this highway considered it dangerous, as preparations had evidently been made some time before the accident to erect barriers or railings thereon. The uncontradicted testimony reveals (record p. 31) that wire in rolls, seemingly of the kind used for barrier purposes, had been left or deposited on the highway at or near the point of the accident for a long period of time prior to January 1941. The wire was not used until after the accident happened; its use before the accident may have saved the lives of these young people and rendered the road safe for travel; the authorities would have at least complied with the rule making the road reasonably safe for travel both by day or night. Added to all these facts was our. own view of the highway and attendant conditions which forced us to the conclusion that the road was dangerous and one that required guardrails or barriers to render it reasonably safe for the traveling public. We repeat, it was a primary road and much traveled.
The state maintains that decedents were guilty of contributory negligence; that they had driven over the road earlier in the day while on the way to Montgomery and therefore must have been acquainted with existing conditions. However, it must be noted that when on the way to Montgomery they must have been driving on the side of the road against the mountain or hillside and may or may not have noticed the danger incident to using the road when traveling in the opposite direction. Whether they, or any of them, had ever used the road before is not definitely shown. It is admitted by stipulation that the decedents had not been drinking, and so far as we are able to determine from the testimony were not guilty of reckless or careless driving. Visibility must necessarily have been bad, considering the weather conditions, *145 and while the driver of the automobile could perhaps see some distance ahead, the question of the effect on the happening of the accident by the presence of the reverse or offset curve is all important and may or could, under alii the circumstances, have confused any driver, even though he was reasonably careful, and thus have caused the automobile to leave the highway at the place as shown in the testimony.
With the absence of barriers, markers, lines or warnings of any kind we may reasonably well be confused as to whether or not there was contributory negligence sufficient to bar an award, and the minds of men may reasonably differ on these matters after a mature consideration of all the testimony and facts as presented. Under these circumstances, considering all the facts, we are of the opinion that an award of $3500.00 should be made in the instant claim, and consequently a similar award of $3500.00 in each of the other five claims, and recommend that an appropriation accordingly be made by the Legislature and the amounts in question be paid to the several claimants respectively, upon the execution of a full and complete release to the state and the state road commission for all damages occasioned by reason of the accident in question.
An award is therefore made in the sum of thirty-five hundred dollars ($3500.00) to each of the aforesaid claimants, in accordance with the majority opinion.
Judge Bland dissents and will file a dissenting opinion.